**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**WESTERN DIVISION AT MEMPHIS**

_____

JNJ LOGISTICS, L.L.C.,              )
                                    )
      Plaintiff,                    )
                                    )
and                                 )
                                    )
SEARS LOGISTICS SERVICES, INC.,     )
                                    )
      Plaintiff-Intervenor          )
                                    )
v.                                  )   No. 2:10-cv-02741-JPM-cgc
                                    )
SCOTTSDALE INSURANCE COMPANY,       )
                                    )
      Defendant.                    )
_____

**OPINION AND ORDER FOLLOWING NON-JURY TRIAL**
_____

     Plaintiff JNJ Logistics, L.L.C. ("Plaintiff" or "JNJ
Logistics") brings this declaratory judgment action against
Defendant Scottsdale Insurance Company ("Defendant" or
"Scottsdale") for a declaration of breach of an insurance
contract, violation of Tennessee Code Annotated Section 56-7-105
(statutory bad faith), breach of the covenant of good faith and
fair dealing, and the damages resulting from the alleged
breaches and violations.  (See Am. Compl., ECF No. 21.)

I.   **BACKGROUND**

   A.   **Factual History**

The case concerns Scottsdale's allegedly wrongful denial of insurance coverage to JNJ Logistics and Scottsdale's allegedly wrongful denial of a defense for JNJ Logistics in a third-party personal-injury action instituted in Mississippi (the "Grove action").

JNJ Logistics and Scottsdale entered into a commercial general liability insurance policy (the "JNJ Logistics-Scottsdale Policy" or "Policy") from January 1, 2004, to January 1, 2005.  JNJ Logistics and Sears Logistics Services, Inc. ("SLS" or "Sears") entered into an agreement whereby JNJ Logistics provided tractors and drivers to move trailers at SLS's warehouses ("hostling services").  Darius Grove ("Grove") worked for JNJ Logistics at SLS's Olive Branch, Mississippi location in 2004.  Grove incurred an injury at the Olive Branch location in July 2004.  JNJ Logistics requested Scottsdale provide coverage for Grove's injury.  Scottsdale denied coverage asserting that the insurance policy provided no coverage for Grove because he was an "employee" of JNJ Logistics and his injuries arose out of the course and scope of his employment with JNJ Logistics.

The Grove action filed in Mississippi state court concerns the injury Grove incurred while working at the SLS facility in

Olive Branch, Mississippi, in July 2004.  See infra Part II.A.
In the complaint, Grove alleged that his injuries resulted from
the negligence of SLS and its employee Roger Farwell.  Id.  As a
result of Grove's personal-injury suit, SLS filed a third-party
complaint ("Amended Third-Party Complaint") in the Grove action
against JNJ Logistics and JNJ Express, asserting common-law
indemnity.  Id.

### B.  Procedural History

The instant case is an action for declaratory judgment,
breach of an insurance contract, and bad-faith denial of an
insurance claim, originally filed by JNJ Logistics against
Scottsdale on September 13, 2010, in Shelby County Chancery
Court in Memphis, Tennessee.  (ECF No. 1.)  Scottsdale properly
removed the action to this Court pursuant to 28 U.S.C. § 1332 on
October 18, 2010.  (Id.)  Plaintiff-Intervenor SLS filed its
Intervening Complaint (ECF No. 16) in this Court on December 23,
2010, and its Amended Complaint (ECF No. 22) on January 24,
2011, seeking common-law indemnity from JNJ Logistics and
joining JNJ Logistics's Complaint seeking a declaratory judgment
against Scottsdale.  JNJ Logistics then filed its Amended
Complaint in this Court on January 24, 2011.  (Am. Compl., ECF
No. 21.)  SLS filed its Second Amended Complaint on February 8,
2011, joining JNJ Logistics's Complaint for a declaratory
judgment against Scottsdale.  (ECF No. 25.)

Prior to the bench trial, the Court decided the parties'
cross-motions for summary judgment. (See ECF No. 83.) In the
Order on the motions for summary judgment, the Court found that
SLS was not an additional insured under the JNJ Logistics-
Scottsdale policy and dismissed as moot SLS's Motion for Summary
Judgment. (See id. at 21-22.) The Court also found there were
genuine issues of material fact relating to Grove's employment
status with JNJ Logistics as it related to the JNJ Logistics-
Scottsdale Policy and, as a result, the breach-of-contract
claims. The Court stated, "The issues remaining for trial are
whether the [Policy's] Employer's Liability Exclusion applies to
preclude coverage to JNJ [Logistics], whether Scottsdale
breached its contract with JNJ [Logistics] as it concerns the
common-law indemnity claims in SLS's third-party lawsuit, and
the amount of any damages resulting therefrom." (Id. at 38-39.)

Also pending before the Court is Scottsdale's Motion for
Revision of Interlocutory Order, filed August 8, 2013. (ECF
No. 113.) Scottsdale requests the Court revise its Order
denying summary judgment to Scottsdale on the issue of its duty
to provide a defense to JNJ Logistics in the Grove action. (Id.
at 1; ECF No. 113-1 at 4-7.) As the instant Order definitively
decides Scottsdale's duty to defend in the Grove action,
Scottsdale's Motion for Revision of Interlocutory Order is
DENIED AS MOOT. Additionally, Scottsdale's pending Motion for

Leave to File Reply in response to Plaintiff's Opposition to Scottsdale's Motion for Revision of Interlocutory Order (ECF No. 130), filed August 26, 2013, is also DENIED AS MOOT.

The Court held a bench trial in this case on August 26, 2013. (ECF No. 131.) JNJ Logistics was represented by Gary E. Veazey and JulieAnna Annastassatos. Scottsdale was represented by Jay Russell Sever, Charlotte J. Sawyer, and Christopher Michael Myatt. JNJ Logistics presented one witness, John Ennis, Sr., president of JNJ Logistics and JNJ Express. (ECF No. 131; ECF NO. 132.) JNJ Logistics also offered six exhibits, which the Court received without objection and entered into evidence. (See ECF No. 132.) Scottsdale called no witnesses and offered no exhibits. (ECF No. 131; ECF No. 132.)

For the reasons set forth below, the Court finds as follows: 1) that Scottsdale owed a duty to defend JNJ Logistics in the third-party complaint filed in the Grove action; 2) that Scottsdale's denial of a defense was a breach of the JNJ Logistics-Scottsdale Policy; 3) that the Policy's Employer's Liability Exclusion does not apply; 4) that Darius Grove was a "temporary worker" as defined in the insurance policy contract; and 5) that the Policy provides coverage for Grove and therefore Scottsdale must provide indemnity to JNJ Logistics if JNJ Logistics is found liable in the Grove action.

At the close of trial, the Court and the parties agreed that the issue of damages flowing from any finding of Scottsdale's liability would be separately briefed.  (See Trial Tr. at 49:16-50:19, ECF No. 133.)

Accordingly, the parties shall submit briefing on the damages flowing from Scottsdale's breach of contract within twenty-eight (28) days of entry of this Order.  The parties shall submit any response briefs within twenty-one (21) days thereafter.

## II.  FINDINGS OF FACT

### A.  Stipulated Facts

Below are the stipulated facts from the parties' Joint Pretrial Order:

[1].  JNJ Logistics is in the business of providing tractors (known as "mules") and drivers for its customers to move trailers at its customers' warehouses at various locations in the state of Tennessee and in Olive Branch, Mississippi.  This activity is known as "hostling services."

[2].  At all times relevant to this action, JNJ Logistics provided hostling services for its customer, Sears Logistics Services, Inc. at Sears Logistics Services, Inc.'s facilities, located at 3456 Meyers Avenue, Memphis, TN 38108, and 10425 Ridgewood Rd., Olive Branch, MS 38654, as set forth in its Hostling Services Agreements dated January 8, 2001 (pertaining to the Ridgewood Rd. location), and March 16, 2003 (pertaining to the Meyers Avenue location).

[3].  The indemnity agreement found within the Hostling Services Agreements does not require JNJ Logistics to indemnify Sears Logistics Services, Inc. for Sears Logistics Services, Inc.'s own wrongful acts; rather,

the agreement only requires JNJ Logistics to indemnify Sears Logistics Services, Inc. when Sears Logistics Services, Inc. is found legally liable for JNJ's actions.

[4]. Sears Logistics Services, Inc. is a Delaware corporation, authorized to transact business in the states of Mississippi and Tennessee.

[5]. Scottsdale issued Policy No. CLS0890533-01 (the "Policy") to JNJ [Logistics] for the period January 1, 2004 to January 1, 2005. The Policy provides commercial general liability coverage to JNJ [Logistics] subject to certain terms, conditions, limitations and exclusions.

[6]. In a letter dated August 23, 2005, Scottsdale denied coverage for Mr. Grove's injuries "because this loss arises contains [sic] 'bodily injury' to an 'employee' arising out of the course and scope of his employment with JNJ Logistics." It further denied coverage because "the contract you entered into with Sears Logistics . . . does not qualify as an insured contract and no coverage is available for Sears Logistics under this policy."

[7]. In 2007, Darius Grove filed a lawsuit against Sears Logistics Services, Inc. in Desoto County, Mississippi, styled Grove v. SLS, Docket No. CV2007-0096 (the "Grove action"), alleging that his injuries incurred in July 2004 resulted from the negligence of Sears Logistics Services, Inc., and Sears Logistics Services' employee, Roger Farwell.

[8]. Sears Logistics Services, Inc. filed a Third-Party Complaint in the Grove action against JNJ Express, Inc. and JNJ Logistics, alleging common [sic] law indemnity.

[9]. Mr. and Mrs. Grove and Sears Logistics Services settled the Grove action in 2011, and the Circuit Court Judge in Desoto County ordered the case dismissed with prejudice, preserving the claims of Sears Logistics Services, Inc. against JNJ Express, Inc., on October 11, 2011. The third-party indemnity claim against JNJ Logistics has not been dismissed.

[10]. JNJ Logistics filed its lawsuit for declaratory judgment, breach of contract and bad faith in the Chancery Court for Shelby County on September 13, 2010.

(ECF No. 119 at 7-8.)

**B.   Testimony and Evidence Introduced at Trial**

    **1.   Evidence**

JNJ Logistics offered six exhibits, which the Court marked and entered:  Exhibit 1, the State of Tennessee Certificate of Existence for JNJ Express; Exhibit 2, JNJ Logistics's Certificate of Authorization to do business in Tennessee; Exhibit 3, the Hostling Services Agreement between SLS and JNJ Logistics, dated March 16, 2003; Exhibit 4, the Renewal Certificate for Scottsdale Insurance Policy No. CLS0890533-01, the insurance policy at issue between JNJ Logistics and Scottsdale; Exhibit 5, the Application for Driver Qualification for Darius Grove; and Exhibit 6, the Amended Third-Party Complaint in Grove v. Sears Logistics Services, Case No. CV2007-0096, filed in the Circuit Court of DeSoto County, Mississippi. (See ECF No. 132; Trial Tr. at 4, ECF No. 133 at PageID 1922.) Each exhibit was received without objection.

    **2.   John Ennis, Sr.**

Plaintiff called one witness, John Ennis, Sr. ("Ennis"). Ennis testified that he was the president and owner of JNJ Express and JNJ Logistics in 2004.  (Trial Tr. at 17:9-10, ECF

No. 133.)  He explained that JNJ Express is "a long haul
carrier" that operated in forty-eight states, and that JNJ
Logistics is a "whole separate company" that provides "yard mule
service" for customers, which entails managing and organizing a
customer's yard.  (Id. at 17:14-22.)  JNJ Logistics operates by
"put[ting] loaded trailers in one certain place and empty
trailers in another certain place and tr[ies] to manage [a
customer's] yard, increase the productivity on the[] yard which
will save [the customer] money."  (Id. at 17:23-18:1.)

     Ennis testified that JNJ Logistics had written contracts
for the hostling services it provided to its customers, namely
SLS.  (Id. at 18:5-17.)  Ennis verified the authenticity of
Exhibit 3, the hostling-services agreement between JNJ Logistics
and SLS, effective in 2003.  (Id. at 18:13-19:4.)

     Ennis further testified that JNJ Logistics's demand for
employees to provide hostling services fluctuated.  (Id. at
19:22-20:18.)  He noted that "every spring" there was an
increase in demand for employees, and specifically an increased
need in the spring at the Olive Branch, Mississippi location.
(Id. at 19:22, 24:7-10.)  Ennis described the working
relationship between SLS and JNJ Logistics:

> Sears would only give us what we needed moved and the
> timeframe to move it in.  They wouldn't tell us where
> to move it.  They would just tell us – we go in in the
> mornings and there would be a list in the mailbox that
> told you what to put in the door.  You go get that

list and you go – my leadman would, he would go in and
actually do a yard check, make sure every driver
brought something in at night and put it in the right
location of the yard so we could speed up and know
where to go get it. . . . So once we got it organized
in the yard check that we are going to give to Sears,
Sears would leave us what they wanted put in the door
that they go unload first from the day before. The
leadman would divide that up between the other two
drivers and hisself [sic], and put them in in the
order we felt like they needed to go in in [sic].

(Id. at 21:11-22:1.)

Regarding the employment relationship between Ennis and
Grove, Ennis testified that he personally dealt with personnel
problems (id. at 23:2-4) and that though Grove worked at SLS,
SLS did not direct Grove's work (id. at 30:11-14). Ennis
testified that his supervision of Grove was required by the
contract between SLS and JNJ Logistics, and that he "was
responsible for all the safety meetings which [SLS] require[d]."
(Id. at 30:14-16.)

Ennis testified that he had purchased insurance coverage
for the work that was conducted at SLS. (Id. at 23:14-25.)
Ennis testified that he knew Grove and that he had hired Grove
"as an over-the-road driver," a driver who would work on the
road away from home for days at a time. (Id. at 24:24-25:3,
25:23-26:2.) Ennis authenticated Grove's application for
employment with JNJ Express, which was then entered as
Exhibit 5. (Id. at 25:8-18.) Ennis explained that in late
2003, Grove desired a position as a "city driver"--a driver who

10

only works locally--but that Ennis did not have a city driver

position available at the time.  (Id. at 26:5-27:11.)  Ennis

testified that he offered to Grove the seasonal work at SLS,

which was not city driving, but was in-town work.  (Id. at

27:14-25.)  Ennis stated,

> April is when the seasonal stuff come [sic] in at JNJ
> Logistics, Sears required, and in my head, I had
> remembered Darius [Grove] asking me four or five
> times, because we wasn't [sic] as big as we are now,
> and I knew every – still know every driver I ever
> employed, but knew every employee, and I thought about
> Darius [Grove] and I offered it to him, I said this
> will be temporary, I can temporary work you over at
> JNJ Logistics.   And sometimes when the season is
> started – it starts about the end of March and runs
> sometimes over into June, no later than July.  I said
> when that happens, you will have to go back over the
> road, and he agreed to it, but he got hurt.

(Id. at 27:14-25.)

Regarding Grove's injury, Ennis testified that Grove

brought a claim for the injury, which was then turned over to

JNJ Express's worker's compensation department.  (Id. at 28:4-

11.)  Ennis stated,

> [Grove] drawed [sic] his work[er's] comp[ensation] and
> had two or three operations on his legs, and then
> there was a lawsuit, and I presented it to Pat Irvin
> at Barkley Insurance [Ennis's insurance agent], he
> [Irvin] presented it to Scottsdale, and next thing I
> know, I was denied, had no coverage.

(Id. at 28:10-15.)

Ennis testified as to the method by which Grove was paid

while working at the SLS facility:

Q:  Now, while Darius Grove was working for JNJ Express, who paid Darius Grove, what entity paid him?

A:  JNJ Express paid him, but my accountant – we keep up with hours when they work in Logistics because it's two separate companies, my accountant would take – with a fee on top of it, whatever it cost to have been working, and charge it back to Logistics.

Q:  All right.  So [JNJ] Express paid his wages?

A:  Yes, sir.

Q:  And then there was an intercompany settle-up, if you will?

A:  Yes, sir.

Q:  Okay.  So did he always receive while he was working at Olive Branch at Sears Logistics [Services] an Express check?

A:  Yes, sir. . . . We never changed them for a short time.  If you're just going to help for a short time, we temporary loaned them to the other company, kept the record of hours, turned it into our accountant, and our accountant would work it out where the company got charged rather than bounce them from one payroll to the other.

(Id. at 28:22-29:18.)  Additionally, Ennis testified that after Grove could not return back to work, he filed for unemployment against JNJ Express.  (Id. at 29:19-30:10.)

Ennis also testified that, as a result of the Grove action and Scottsdale's denial of coverage, he had to hire an attorney to defend JNJ Logistics, which cost him "a little over $195,000, nearly $200,000."  (Id. at 30:19-31:6.)

On cross-examination, Ennis testified that Grove was hired by JNJ Express to drive, thus, at the time of his hiring, no one

at JNJ Express "indicate[d] to [Grove] that he would ever be doing anything other than driving." (Id. at 34:24-35:3.) Consistent with his testimony on direct examination, Ennis explained that the idea of using Grove for seasonal work came up in 2004, after Grove was hired. (Id. at 36:1-4 ("When the seasonal work come [sic] for Sears and I knew that I had done this at other locations, and used people off the road, and so I asked for volunteers who want [sic] to, and Darius [Grove] was one of them.").) Ennis testified that at the time of Grove's accident, "there were no other long haul drivers doing yard work at the Olive Branch facility," though there had been in the past. (Id. at 37:17-22.) Ennis testified that while Grove worked at the SLS Olive Branch location with JNJ Logistics, Ennis was Grove's "direct boss," though Grove's bosses at JNJ Express would still have supervised him "if he needed to go back on the road or do something." (Id. at 38:4-16.)

Ennis testified that JNJ Express was not a temporary employment agency and that it had never held itself out as such, nor had it hired temporary employees from a temporary employment agency. (Id. at 41:3-11.) Ennis testified that, in his work at SLS, Grove was not "substituting for an employee of JNJ Logistics at the time of the accident." (Id. at 42:7-9.) Ennis reiterated that Grove "was down there because of the seasonal pick up, and I did not have enough part-time employees to work

13

in Logistics to cover everything that needed to be covered, so I temporarily assigned [Grove] from JNJ Express to JNJ Logistics." (Id. at 42:9-12.)

Ennis admitted that Grove was not reported as a "new hire" under Tennessee labor laws when Grove went to work for JNJ Logistics.  (Id. at 41:12-42:6.)  On redirect, Ennis clarified that with regard to the "new hire law" in Tennessee, Grove was always an employee of JNJ Express, though he was "loaned" to JNJ Logistics.  (Id. at 45:5-16 ("[JNJ Express] temporarily loaned [Grove] to JNJ Logistics to do the service, and my accountant figures that out how to cut the money back out under a common pay agreement.").)

## III. CONCLUSIONS OF LAW

### A.   Scottsdale's Duty to Defend

"Whether a duty to defend arises depends solely on the allegations contained in the underlying complaint." Tenn. Farmers Mut. Ins. Co. v. Cherry, W2007-00342COAR3CV, 2008 WL 933479, at *5 (Tenn. Ct. App. Apr. 7, 2008) (citing Travelers Indem. Co. of Am. v. Moore & Assocs., Inc., 216 S.W.3d 302, 305 (Tenn. 2007)), perm. app. denied (Tenn. Oct. 27, 2008).  "An insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery."  Lafayette Ins. Co. v. Roberts, No. W2012—02038-COA-

14

R3-CV, 2013 WL 3961173, at *4 (Tenn. Ct. App. July 31, 2013) (citing <u>Travelers Indem. Co.</u>, 216 S.W.3d at 305); <u>see also</u> <u>Erie Ins. Exch. v. Columbia Nat'l Ins. Co.</u>, M2012-00331-COA-R3CV, 2013 WL 395982, at *7 (Tenn. Ct. App. Jan. 30, 2013) ("An insurer's duty to defend is triggered when its policy arguably, as opposed to distinctly, covers the claims being made, and continues until the facts and the law establish that the claimed loss is not covered." (citations omitted) (internal quotations omitted)), <u>perm. app. denied</u> (Tenn. Aug. 13, 2013).

"An insurer may not properly refuse to defend an action against its insured unless it is plain from the face of the complaint that the allegations fail to state facts that bring the case within or potentially within the policy's coverage." <u>Cherry</u>, 2008 WL 933479, at *5.  "[T]he pleading test for determination of the duty to defend is based exclusively on the facts as <u>alleged</u> rather than on the facts as they actually are." <u>St. Paul Fire & Marine Ins. Co. v. Torpoco</u>, 879 S.W.2d 831, 835 (Tenn. 1994) (quoting <u>Am. Policyholders' Ins. Co. v. Cumberland Cold Storage Co.</u>, 373 A.2d 247, 249 (Me. 1977) (internal quotation marks omitted).

The Amended Third-Party Complaint filed in the <u>Grove</u> action, admitted as Exhibit 6 (<u>see</u> ECF No. 132; ECF No. 8-4), states two claims for common-law indemnity relevant to the instant case and the question of Scottsdale's duty to defend JNJ

15

Logistics.  In pertinent part, the Amended Third-Party Complaint

alleges:

> 15.  Although denying liability to the Plaintiffs in
> the premises, in the event that the fact-finder holds
> Sears is liable to the Plaintiffs, Sears would show
> that JNJ Logistics, L.L.C. and/or JNJ Express, Inc.'s
> liability to Plaintiffs would be active as to both
> Sears and Plaintiffs.  Any liability born by Sears,
> would be passive only, creating at law a right of
> Sears to seek indemnity from JNJ Logistics, L.L.C.
> and/or JNJ Express, Inc. for any and all costs of
> litigation, litigation expenses, attorney's fees, and
> any damages awarded, if any at all, for Plaintiffs
> against it in the premises.
>
> 16.  Although denying liability to the Plaintiffs
> in the premises, in the event that the fact-finder
> holds Sears is liable to the Plaintiffs, Sears would
> show that Plaintiff Darius Grove was a borrowed
> servant under Mississippi law at the time of the
> incident.  Therefore, Sears is barred from liability
> in tort, thereby creating a right of Sears to seek
> indemnity from JNJ Logistics, L.L.C. and/or JNJ
> Express, Inc. for any and all costs of litigation,
> litigation expenses, attorney's fees, and any damages
> awarded, if any at all, for Plaintiffs against it in
> the premises.

(ECF No. 8-4 ¶¶ 15-16.)

The JNJ Logistics-Scottsdale Policy includes certain

exclusions relevant to the instant case.  Scottsdale invoked one

such exclusion, the "Employer's Liability Exclusion," when it

denied JNJ Logistics coverage.  See supra Part II.A. ¶ 5.  In

pertinent part, the Policy states:

> 2.  Exclusions
>     This insurance does not apply to:
>
> . . . .

      e.   Employer's Liability
         "Bodily injury" to:
         (1) An "employee" of the insured arising out
         of and in the course of:
            (a) Employment by the insured; or
            (b) Performing duties related to the
            conduct of the insured's business;[]
. . . .

This exclusion applies:
    (1) Whether the insured may be liable as an
    employer or in any other capacity; and
    (2) To any obligation to share damages with or
    repay someone else who must pay damages because
    of the injury.

This exclusion does not apply to liability assumed by
the insured under an "insured contract".

(ECF No. 54-2 at PageID 401.)[1]  The term "employee" is not a

defined term in the policy, but the policy states, "'Employee'

includes a 'leased worker'.  'Employee' does not include a

'temporary worker'."  (<u>Id.</u> at PageID 412.)  The policy defines

"leased worker" as "a person leased to you by a labor leasing

firm under an agreement between you and the labor leasing firm,

to perform duties related to the conduct of your business.

'Leased worker' does not include a 'temporary worker'."  (<u>Id.</u> at

PageID 413.)  The policy defines "temporary worker" as "a person

who is furnished to you to substitute for a permanent 'employee'

on leave or to meet seasonal or short-term workload conditions."

(<u>Id.</u> at PageID 414.)

---

[1] Although not entered as an Exhibit at trial, in their trial briefs both
parties reference the JNJ Logistics-Scottsdale Policy submitted with their
respective motions for summary judgment as true and correct copies of the
insurance policy, therefore there is no dispute as to the authenticity of the
policy.  (<u>See</u> ECF No. 54-2; ECF No. 55-3.)

JNJ Logistics argues that, taking the common-law indemnity allegations in the Amended Third-Party Complaint as true, Scottsdale has a duty to defend JNJ Logistics because the allegations indicate that the Policy's Employer's Liability Exclusion is inapplicable.  Although the allegations state that Grove was the borrowed servant of JNJ Logistics, JNJ Logistics argues that the allegations do not "inform Scottsdale whether . . . Grove[] was or was not a 'temporary worker.'" (ECF No. 136 at 3.)  JNJ Logistics contends that "[u]nless the allegations in the complaint, taken as true, definitively establish there would be <u>no coverage</u>, then the insurer <u>must</u> provide a defense." (<u>Id.</u> at 4 (emphasis in original).)  In the instant case, JNJ Logistics argues that the Amended Third-Party Complaint lacks sufficient detail to show whether Grove, although alleged to be JNJ Logistics's employee, was not excluded from the employer's liability exclusion because he was a "temporary worker" as defined in the Policy.  (<u>Id.</u>)

Scottsdale argues that "SLS's common[-]law indemnity allegation is premised on the borrowed[-]servant doctrine and JNJ Logistics could only have been liable to SLS if JNJ Logistics was, in fact, the general employer of Grove when he was injured." (ECF No. 135 at 7.)  If JNJ Logistics was alleged to be Grove's general employer, Scottsdale argues that the Policy's Employer's Liability Exclusion, which precludes

coverage for bodily injury to JNJ Logistics's employees, is applicable, and therefore Scottsdale's denial of a defense in the <u>Grove</u> action was correct.  (<u>Id.</u> at 4-5.)  Scottsdale contends that, as a result of the borrowed-servant doctrine's application, "there is no suggestion, implication or possible reading of the alleged facts in SLS's third-party complaint that Grove was a 'temporary worker' of JNJ Logistics.  If Grove was a servant borrowed from JNJ Logistics, he cannot also be a 'temporary worker.'"  (<u>Id.</u> at 7.)

Scottsdale also argues in its post-trial briefs that because JNJ Logistics "asserted in writing in its Motion For [sic] Summary Judgment that Grove was not a 'temporary worker,'" it cannot now assert the opposite.  (ECF No. 135 at 9; ECF No. 137 at 7.)  Scottsdale asserts that JNJ Logistics has made "a judicial admission that Grove was not a 'temporary worker' of JNJ Logistics when he was injured."  (ECF No. 135 at 9; ECF No. 137 at 7.)

While Scottsdale's citation to <u>MacDonald v. General Motors Corp.</u>, 110 F.3d 337 (6th Cir. 1997), provides the standard courts apply to determine whether statements made by counsel will qualify as judicial admissions – whether those statements were "deliberate, clear, and unambiguous" – Scottsdale has overlooked the remainder of the <u>MacDonald</u> court's opinion relating to judicial admissions.  Specifically, the <u>MacDonald</u>

court stated that, in the context of the case, "counsel's statements dealt with opinions and legal conclusions, and we are thus reluctant to treat them as binding judicial admissions." Id. at 341.  Relying on Glick v. White Motor Co., 458 F.2d 1287, 1291 (3d Cir. 1972) ("The scope of judicial admissions is restricted to matters of fact which otherwise would require evidentiary proof, and does not include counsel's statement of his conception of the legal theory of a case."), and New Amsterdam Cas. Co. v. Waller, 323 F.2d 20, 24 (4th Cir. 1963), the MacDonald court determined that an attorney's statements of legal conclusions did not "constitute binding judicial admissions."  MacDonald, 110 F.3d at 341.  Further, this Court has recognized that a memorandum "supporting a motion is not a 'pleading' for purposes of a binding judicial admission." AFSCME Local 1733 v. City of Memphis, No. 11-2577, 2013 U.S. Dist. LEXIS 42712, at *33 (W.D. Tenn. Mar. 26, 2013) (quoting Lockert v. Faulkner, 574 F. Supp. 606, 609 n.3 (N.D. Ind. 1983)).  In the instant case, JNJ Logistics's arguments presented in its Motion for Summary Judgment were legal arguments relating to the interpretation of the employment exclusion in the JNJ Logistics-Scottsdale Policy, not statements of fact.  Accordingly, the Court finds these statements were not binding judicial admissions and JNJ Logistics is not barred from asserting Grove was a "temporary worker" at trial.

Returning to the question of the Amended Third-Party
Complaint's allegations and the JNJ Logistics-Scottsdale Policy,
insurance contracts in Tennessee are interpreted "using the same
tenets that guide the construction of any other contract."
Garrison v. Bickford, 377 S.W.3d 659, 664 (Tenn. 2012).  The
terms of an insurance policy "should be given their plain and
ordinary meaning, for the primary rule of contract
interpretation is to ascertain and give effect to the intent of
the parties."  Id. (quoting Clark v. Sputniks, LLC, 368 S.W.3d
431, 441 (Tenn. 2012)) (internal quotation marks omitted).
"[T]he intent of the parties . . . is to be derived from the
four corners of the policy giving effect to all parts."  Kiser
v. Wolfe, 353 S.W.3d 741, 748 (Tenn. 2011) (second alteration in
original) (quoting Blue Diamond Coal Co. v. Holland-Am. Ins.
Co., 671 S.W.2d 829, 833 (Tenn. 1984)) (internal quotation marks
omitted).  "[W]hen the language is clear, courts must not look
beyond the four corners of the instrument.  It is only when a
provision is found to be ambiguous that its interpretation will
be construed against the drafter of the contract."  Id.
(citations omitted).  Furthermore, the Tennessee Supreme Court
has explicitly stated that, in its view, "there is a fundamental
flaw in analyzing insurance contract terms under tort
principles."  Harrell v. Minn. Mut. Life Ins. Co., 937 S.W.2d
809, 810 (Tenn. 1996).

Having reviewed the Policy at issue, the Court finds the terms as defined are not ambiguous. While Scottsdale may allege Grove is a JNJ Logistics employee via the "borrowed servant" doctrine, the Policy's potential coverage is determined by the language of the insurance policy, not the common-law "borrowed servant" doctrine. See Harrell, 937 S.W.2d at 810. The Court, therefore, need not import the "borrowed servant" doctrine to determine Grove's status as alleged in the Amended Third-Party Complaint, and will instead determine Grove's status and Scottsdale's coverage obligations with reference to the terms explicitly defined within the Policy. As a result, taking the allegations in the Amended Third-Party Complaint as true, the Court must determine whether the Policy "arguably, as opposed to distinctly, covers the claims being made," namely whether the Amended Third-Party Complaint alleges facts sufficient to show Grove was JNJ Logistics's employee and not a "temporary worker." See Erie Ins. Exch., 2013 WL 395982, at *7.

The Tennessee Court of Appeals was recently faced with a similar question of interpreting the term "temporary worker" in Lafayette Ins. Co. v. Roberts, W2012-02038-COA-R3CV, 2013 WL 3961173 (Tenn. Ct. App. July 31, 2013), which both parties cite to support their respective arguments. In Roberts, the court had to decide whether Roberts was an "employee" or a "temporary worker" as defined in a commercial general liability insurance

policy to determine whether Lafayette Insurance Co. had a duty
to defend in the underlying tort case.  The court stated:

> The complaint filed by Mr. Burns[, the injured third
> party,] alleged that he was an "employee" of the
> Roberts and not an independent contractor.  However,
> there were no facts alleged in the complaint that
> would indicate whether Mr. Burns met the definition of
> a "temporary worker," which, according to the policy,
> is not included within the definition of an
> "employee."  As a result, it is not definitively
> clear, solely from reading the complaint, whether Mr.
> Burns' claims would be covered by the [commercial
> general liability ("CGL")] policy.

<u>Roberts</u>, 2013 WL 3961173, at *5.  The court continued, "Because
the Roberts' CGL policy arguably covered the claims asserted by
Mr. Burns, Insurer had a duty to defend until it established
that the claims were not covered."  <u>Id.</u> (citing <u>Erie Ins. Exch.</u>,
2013 WL 395982, at *7).

The Court finds <u>Roberts</u> applicable to the instant case.
The Amended Third-Party Complaint states in Paragraph 16 that
Sears would show that Grove was a "borrowed servant" of JNJ
Logistics and/or JNJ Express, and thereby show that Grove was an
employee of JNJ Logistics and/or JNJ Express.  As stated <u>supra</u>,
under the Policy at issue, bodily injuries to "employees" are
excluded from coverage.  (<u>See</u> ECF No. 54-2 at PageID 401.)  The
policy's definition of "employee" states, "'Employee' includes a
'leased worker'.  'Employee' does not include a 'temporary
worker'."  (<u>Id.</u> at PageID 412.)  As defined in the policy, a
"temporary worker" is "a person who is furnished to you to

substitute for a permanent 'employee' on leave or to meet seasonal or short-term workload conditions." (Id. at PageID 414.) Accordingly, "temporary workers" are provided coverage for personal injury under the insurance policy.

Taking the facts as pleaded in Paragraph 16 as true, the Court finds Scottsdale owed a defense to JNJ Logistics. Although the Amended Third-Party Complaint arguably states Grove was JNJ Logistics's employee via the "borrowed servant" doctrine, there are not sufficient facts to indicate that Grove was not a "temporary worker," and therefore excluded from the Employer's Liability Exclusion in the insurance policy. As a result, it is not definitively clear from the face of the Amended Third-Party Complaint whether Grove is covered. Therefore, the Policy arguably covered those claims. See Roberts, 2013 WL 3961173, at *5; Southland Mall, LLC v. Valor Sec. Servs., Inc., No. W2003-03066-COA-R3-CV, 2005 WL 762616, at *4 (Tenn. Ct. App. Oct. 12, 2004) ("[I]n case of doubt as to whether or not the allegations of the complaint against the insured state a cause of action within the coverage of their liability policy sufficient to compel the insurer to defend the action, such doubt will be resolved in the insured's favor." (quoting Dempster Bros., Inc. v. U.S. Fid. & Guar. Co., 388 S.W.2d 153, 156 (Tenn. Ct. App. 1964)) (internal quotation marks omitted)). Having found the Amended Third-Party Complaint

24

arguably stated a claim that was covered by the Policy, Scottsdale's duty to defend was triggered.  See Erie Ins. Exch., 2013 WL 395982, at *7.

Additionally, Paragraph 16 of the Amended Third-Party Complaint states that, if found liable, SLS would show that Grove was a "borrowed servant" and therefore "Sears is barred from liability in tort, thereby creating a right of Sears to seek indemnity from JNJ Logistics, L.L.C. and/or JNJ Express, Inc."  (ECF No. 8-4 ¶ 16 (emphasis added).)  The allegation is written in both the conjunctive and alternative.  Taken as true, the allegation indicates that Grove could be JNJ Logistics's borrowed servant, JNJ Express's borrowed servant, or both.

JNJ Logistics argues that Scottsdale's failure to provide a defense "ignores its defense obligation for meritless claims made against its insured that are not specifically excluded" from the Policy.  (ECF No. 134 at 28-29 n.53); see Jackson Hous. Auth. v. Auto-Owners Ins. Co., 686 S.W.2d 917, 922 (Tenn. Ct. App. 1984) ("The duty to defend the insured and the obligation of the insurer to pay valid claims under the terms of the policy are not the same thing.  The insurer has the duty to defend against even those claims that are without merit.").

Scottsdale maintains that the only way for its duty to provide a defense to be triggered is if Grove were JNJ Logistics's "borrowed servant" and, by extension, JNJ

25

Logistics's general "employee." (See ECF No. 135 at 3, 5-7
("SLS's common[-]law indemnity allegation is premised on the
borrowed[-]servant doctrine and JNJ Logistics could only have
been liable to SLS if JNJ Logistics was, in fact, the general
employer of Grove when he was injured.").) Scottsdale argues,
taking the allegation that Grove was JNJ Express's "borrowed
servant" and, by extension, its general "employee," as true,
there is no coverage and thus no duty to defend.

The Court agrees with JNJ Logistics. Taking the
allegations as true, Grove was alleged to be the "borrowed
servant" of JNJ Logistics, JNJ Express, or both. Although there
may be no coverage under the Policy if Grove were actually found
to be JNJ Express's employee, for a duty to defend, "[t]he
insurer has the duty to defend against even those claims that
are without merit." Jackson Hous. Auth., 686 S.W.2d at 922.
The allegations in the Amended Third-Party Complaint arguably
give rise to a claim that would be covered by the Policy. See
Erie Ins. Exch., 2013 WL 395982, at *7. Accordingly, Scottsdale
should have provided a defense to JNJ Logistics, if only to then
determine that there was, in fact, no coverage or duty to
defend.

Furthermore, taking the facts as true in Paragraph 15 of
the Amended Third-Party Complaint, the Court finds Scottsdale's
duty to defend was triggered. See Travelers Indem. Co.,

216 S.W.3d at 305 ("The duty to defend arises if <u>even one of the</u> <u>allegations</u> is covered by the policy." (emphasis added)).  As stated in Paragraph 15, "Sears would show that JNJ Logistics, L.L.C. and/or JNJ Express, Inc.'s liability to Plaintiffs would be active as to both Sears and Plaintiffs.  Any liability born by Sears, would be passive only, creating at law a right of Sears to seek indemnity from JNJ Logistics, L.L.C. and/or JNJ Express, Inc." (ECF No. 8-4 ¶ 15.)  Taking these facts as true, there is potential coverage if JNJ Logistics was shown to have active liability.  The allegation in Paragraph 15 does not turn on Grove's employment, therefore the Employer's Liability Exclusion in the Policy is inapplicable.

Having found that the Amended Third-Party Complaint alleged sufficient facts to show Grove was covered by the Policy, the Court also finds the allegations in Paragraph 15 of the Amended Third-Party Complaint further support the conclusion that the Amended Third-Party Complaint stated a claim that was arguably covered, and therefore Scottsdale's duty to defend was triggered.

### B.   Breach of Contract

Having determined that Scottsdale's duty to defend was triggered, the Court now turns to the question of whether Scottsdale's denial of that defense was a breach of the JNJ Logistics-Scottsdale Policy.

27

To state a claim for breach of contract under Tennessee law, the plaintiff must show the following three elements:  (1) the existence of an enforceable insurance contract; (2) non-performance amounting to breach of the insurance contract; and (3) damages caused by the breach of contract.  <u>First Tenn. Bank Nat'l Ass'n v. Republic Mortg. Ins. Co.</u>, 276 F.R.D. 215, 220 (W.D. Tenn. 2011).

Regarding the first element, it is undisputed that there is an enforceable insurance contract between JNJ Logistics and Scottsdale.

Regarding the second element, the Court has determined that under the Policy, Scottsdale had a duty to defend JNJ Logistics, which they failed to do.  As a result, Scottsdale's non-performance of their duty to defend resulted in a breach of the insurance contract.

Regarding the third element, the Court finds JNJ Logistics has incurred damages flowing from this breach by having to hire counsel and defend itself in the <u>Grove</u> action.  (<u>See</u> Trial Tr. 30:19-31:9 (stating Plaintiff had to hire counsel to defend itself), ECF No. 133.)  While the quantum of damages will be determined after the parties brief the issue, the Court finds there are damages that resulted from Scottsdale's breach.

Accordingly, the Court finds Scottsdale breached its insurance contract with JNJ Logistics by failing to provide JNJ Logistics a defense in the <u>Grove</u> action.

**C. Duty to Indemnify**

The remaining issue before the Court is the issue of Grove's employment status as it relates to Scottsdale's duty to indemnify JNJ Logistics in the event JNJ Logistics is found liable to Sears Logistics Services in the <u>Grove</u> action. Scottsdale's duty to indemnify, unlike its duty to defend, depends on the facts as they actually are. <u>Torpoco</u>, 879 S.W.2d at 835.

In the instant case, Scottsdale's duty to indemnify turns on the employment status of Grove. If Grove is shown to be an employee of JNJ Logistics, then the "Employer's Liability Exclusion" in the Policy precludes coverage. (<u>See</u> ECF No. 54-2 at PageID 401.) Coverage will also be precluded if Grove is shown to be a "leased worker" as defined in the Policy. (<u>Id.</u> at 412-13.) If, on the other hand, Grove is shown to be JNJ Logistics's "temporary worker" as defined in the Policy, then the "Employer's Liability Exclusion" will not apply and Grove will be afforded coverage. (<u>Id.</u> at PageID 414.)

JNJ Logistics argues that "if JNJ Logistics is found liable on the underlying common[-]law liability claim, Scottsdale will owe JNJ Logistics indemnity because Grove was JNJ Logistics'

29

'temporary worker,' and therefore any common[-]law liability for his injuries is clearly covered under the policy." (ECF No. 134 at 4.) JNJ Logistics asserts that the evidence introduced at trial proved not only that Grove was JNJ Express's employee, but also that Grove was JNJ Logistics's "temporary worker" as that term is defined in the Policy. (Id.) JNJ Logistics argues that it is Scottsdale's burden, as the insurer, to prove the application of an exception in the Policy, and that it has not met its burden to do so. (Id. at 4, 11-12.) JNJ Logistics argues it has shown the Policy's "Employer's Liability Exclusion" does not apply to the instant case, and that by extension Grove is covered by the Policy and Scottsdale will owe indemnity to JNJ Logistics in the event JNJ Logistics is found liable in the Grove action, because Scottsdale has failed to prove the exclusion applies. JNJ Logistics asserts that, for the Policy's Employer's Liability Exclusion to apply and preclude coverage for Grove, Scottsdale would have to show:

> 1) Grove was JNJ Logistics' "employee" as that term is commonly understood;
> OR
> 2) Grove was a "leased worker," as that term is clearly defined in the policy drafted by Scottsdale;
> AND
> 3) Grove was not JNJ Logistics' "temporary worker," which is also clearly defined in the policy drafted by Scottsdale.

(Id. at 11.) JNJ Logistics contends Scottsdale has not met this burden because 1) "the evidence was uncontroverted at trial

that, at the time of the accident, Grove was an 'employee' of
JNJ Express – not JNJ Logistics – as the term 'employee' is
commonly understood"; 2) "the evidence was uncontroverted that
Grove was <u>not</u> a 'leased worker' because there was no evidence to
indicate that he was leased to JNJ Logistics by a labor leasing
firm"; and 3) "the evidence presented at trial demonstrated that
Grove was JNJ Logistics' 'temporary worker' as defined in
Scottsdale's policy." (<u>Id.</u> at 11-12; <u>see also id.</u> at 16-21.)
JNJ Logistics acknowledges that the Court need not determine
Grove was, in fact, a "temporary worker" if it determines the
Employer's Liability Exclusion does not apply because Scottsdale
has not shown Grove to be an "employee" of JNJ Logistics or its
"leased worker." (ECF No. 134 at 17.)

Scottsdale argues that it has no duty to indemnify JNJ
Logistics with regard to SLS's common-law indemnity claim
because "the allegations [in the Amended Third-Party Complaint]
could under no circumstances lead to a result which would
trigger the duty to indemnify." (ECF No. 135 at 11.)
Scottsdale recognizes that "JNJ Logistics' potential liability
is premised upon Grove's status as its employee.  It is
axiomatic JNJ Logistics can only be found liable to SLS if Grove
is an employee of JNJ Logistics . . . ." (<u>Id.</u> at 12.)  In
response to JNJ Logistics's argument that Grove was JNJ
Express's employee but a "temporary worker" as defined by the

31

Policy and therefore covered, Scottsdale states, "it would be a legally unfounded claim if Grove were a 'temporary worker' because he would be employed by someone other than JNJ Logistics or JNJ Express, i.e., a temporary staffing agency." (Id.) Scottsdale contends that Ennis's testimony shows that JNJ Express is not a temporary staffing agency, that Ennis never hired workers using a staffing agency, and that Grove "was not hired to substitute for a 'permanent employee' on leave," therefore Grove cannot be considered a "temporary worker" as defined by the Policy. (Id. (citing Trial Tr. at 40:25, 41:1-11, 42:7-9, ECF No. 133).)[2]

Scottsdale also states that a determination as to its duty to indemnify is "premature at this stage" because the duty to indemnify is triggered after "'a resolution of the underlying claim'" and "JNJ Logistics has not been cast in judgment in the Grove action nor has JNJ Logistics paid any monies in settlement of the common[-]law indemnity claim." (Id. at 11-12 (quoting Policeman's Benefit Ass'n of Nashville v. Nautlius Ins. Co., No. M2001-00611-COA-R3-CV, 2002 WL 126311, at *8 (Tenn. Ct. App. 2002)).)

---

[2] Further, Scottsdale contends that JNJ Logistics has stated previously that Grove was not a "temporary worker," that this statement should be taken as a "judicial admission," and thus JNJ Logistics "cannot argue that the Employer's Liability Exclusion should not apply based on the 'temporary worker' exception to the Employer's Liability Exclusion." (Id. at 12-13.) For the same reasons stated, supra Part III.A., the Court finds JNJ Logistics's argument in its summary-judgment brief was for the purpose of a legal theory, not a statement of fact, and is not a judicial admission.

In order to maintain an action for a declaratory judgment, "a real question rather than a theoretical one must be presented and a legally protectable interest must be at stake.  If the controversy depends upon a future or contingent event, or involves a theoretical or hypothetical state of facts, the controversy is not justiciable." State v. Brown & Williamson Tobacco Corp., 18 S.W.3d 186, 193 (Tenn. 2000) (citation omitted).  "A case is not justiciable if it does not involve a genuine, existing controversy requiring the adjudication of presently existing rights."  UT Med. Grp., Inc. v. Vogt, 235 S.W.3d 110, 119 (Tenn. 2007).  As stated above, Scottsdale's duty to indemnify JNJ Logistics turns on Grove's employment status under the terms of the Policy.  Whether Grove is an "employee," a "leased worker," or a "temporary employee" of JNJ Logistics is an issue of contract interpretation involving "presently existing rights" among "parties who have a legally cognizable interest in the issues." Id.  Accordingly, the issue of Scottsdale's duty to indemnify is not premature.

"[A]n insurance company has the burden of proving that an exclusion in its policy applies to a claim." Mass. Mut. Life Ins. Co. v. Jefferson, 104 S.W.3d 13, 22 n.10 (Tenn. Ct. App. 2002) (citing Interstate Life & Accident Ins. Co. v. Gammons, 408 S.W.2d 397, 399 (Tenn. 1966)).  The Court agrees that Scottsdale has not met its burden to show the Employer's

Liability Exclusion applies to preclude coverage in the instant case.  Therefore, the Court finds Scottsdale has a duty to indemnify JNJ Logistics if it is found liable in the <u>Grove</u> action.

### 1.   Grove's Employment Status

First, it is uncontroverted that Grove was the employee of JNJ Express at the time of his injury, not JNJ Logistics.  (<u>See</u> Trial Tr. at 13:24-14:2, ECF No. 133.)  Scottsdale agreed that "[t]he testimony certainly will show that the [sic] Mr. Grove was at the time of the accident an employee, a full employee of JNJ Express."  (<u>Id.</u>)  As a result, Grove was not an "'employee' of the insured" as the term is commonly understood with regard to the Policy.

### 2.   Grove's Status as a "Leased Worker"

Second, evidence received at trial indicates Grove was not a "leased worker," as that term is defined in the Policy. Pursuant to the insurance policy, a "'leased worker' means a person leased to you by a labor leasing firm under an agreement between you and the labor leasing firm, to perform duties related to the conduct of your business.  'Leased worker' does not include a 'temporary worker.'"  (ECF No. 54-2 at PageID 413.)  At trial, Ennis testified that Grove was hired by JNJ Express and worked at JNJ Logistics through an agreement between the two companies, not through an agreement between JNJ

Logistics and a labor-leasing firm.  (Trial Tr. at 25:20-27:25, 40:20-24.)  Ennis also testified:

> Q:  Is JNJ Express a temporary employment agency?
>
> A [ENNIS]:  No, sir.
>
> Q:  Have you ever held yourself out as a temp agency in the State of Tennessee or anywhere else?
>
> A [ENNIS]:  No, sir.
>
> Q:  Have you ever either in your capacity with [JNJ] Logistics or your capacity with [JNJ] Express hired a temporary employee from a temp agency?
>
> A [ENNIS]:  Not that I can recall.

(Trial Tr. at 41:3-11.)  As a result, the Court finds Grove was not a "leased worker" as defined by the Policy.

### 3.  Grove's Status as a "Temporary Worker"

Third, evidence received at trial indicates that Grove was a "temporary worker" as that term is defined in the Policy. Ennis testified regarding the arrangement between JNJ Logistics and JNJ Express:

> Q:  So did [Grove] always receive while he was working at Olive Branch at Sears Logistics an Express check?
>
> A [ENNIS]:  Yes, sir. . . .  We never changed them for a short time.  If you're just going to help for a short time, we temporary loaned them to the other company, kept the record of hours, turned it into our accountant, and our accountant would work it out where the company got charged rather than bounce them from one payroll to the other.

(Trial Tr. at 29:9-18, ECF No. 133.)  On cross-examination, Ennis elaborated his testimony:

> Q:  You talked about a settling up that your accountant did between [JNJ] Logistics and [JNJ] Express?
>
> A [ENNIS]:  Yes.
>
> Q:  Explain what happened there.
>
> A [ENNIS]:  We keep the hours in [JNJ] Logistics, and he charges it – at JNJ Express, employees are working Logistics, we keep the hours and give it to Richard Berry, and he puts the money back over into JNJ Logistics.
>
> Q:  Was [sic] there any contracts between [JNJ] Logistics and [JNJ] Express for purposes of any workers that you were using from [JNJ] Express?
>
> A [ENNIS]:  When you say contract, we had a common pay agreement that my attorney drawed [sic] up, where he could do that to pay one company for work done at the other company.

(Id. at 40:12-24.)  Ennis also testified:

> Q:   .  .  .  And was the arrangement between [JNJ] Express and [JNJ] Logistics, did it change over the years in terms of using long haul drivers to do yard work, or has it always been the same?
>
> A:  Always been the same.
>
> Q:  Okay.
>
> A:  On a temporary basis.

(Id. at 37:23-38:3.)  Ennis also testified that he was Grove's superior while Grove was working for JNJ Logistics, (see id. at 38:11-39:18), and that SLS did not "control" Grove (see id. at 30:11-18).

Ennis also explained that when Grove came to work at JNJ Logistics, it had eight employees doing "yard mule business," and Grove was the ninth.  (See Trial Tr. at 42:13-24, ECF

No. 133.)  When asked if Grove was "essentially an addition to
your workgroup and not replacing someone," Ennis replied, "We
was [sic] temporary using him for the seasonal adjustment of the
lawnmowers and heavy season to get through the three-month
period." (Id. at 42:25-43:4.)

Scottsdale argues that "it would be a legally unfounded
claim if Grove were a 'temporary worker' because he would be
employed by someone other than JNJ Logistics or JNJ Express,
i.e., a temporary staffing agency." (ECF No. 135 at 12.)
Scottsdale argues that because Ennis testified that JNJ Express
was not a temporary staffing agency, that there was no contract
between JNJ Logistics and JNJ Express regarding Grove's work at
SLS, and that "Grove was not hired to substitute for a
'permanent employee' on leave," therefore Grove could not be a
"temporary worker." (Id.)

In Roberts, the Tennessee Court of Appeals concluded that
the "definition of 'temporary worker' does require the
involvement of some third party who 'furnish[es]' the temporary
worker 'to' the insured." Roberts, 2013 WL 3961173, at *7.  The
"temporary worker" definition at issue in Roberts and the
definition in the instant case are identical:  "'Temporary
worker' means a person who is furnished to you to substitute for
a permanent 'employee' on leave or to meet seasonal or short-
term workload conditions." Compare id. at *6, with ECF No. 54-2

37

at PageID 414.  The Roberts court was not faced with this
Court's question of whether the third party furnishing the
temporary worker must be a temporary staffing agency; the
Roberts court concluded only that "third party involvement is
required."  Roberts, 2013 WL 3961173, at *10.

Having reviewed recent Tennessee case law construing the
definition of "temporary worker" and the Policy in the instant
case, the Court finds the definition of "temporary worker" in
the Policy requires only that a third party furnish the worker.
Contrary to Scottsdale's argument, the term does not require the
third party to be any particular type of furnishing agent or
involved in any particular business when furnishing the
temporary worker.  The evidence received at trial indicates that
Grove was furnished by a third party, JNJ Express, to JNJ
Logistics.

Furthermore, Scottsdale's argument that "JNJ Logistics'
potential liability is premised upon Grove's status as its
employee" and that "[i]t is axiomatic JNJ Logistics can only be
found liable to SLS if Grove is an employee of JNJ Logistics" is
incomplete.  (ECF No. 135 at 12.)  The insurance policy
indicates that employees of JNJ Logistics are excluded from
coverage via the Employer's Liability Exclusion.  (See ECF
No. 54-2 at PageID 401.)  The policy also excludes from this
exclusion those that qualify as "temporary workers."  (See id.

at 414.)  As a result, JNJ Logistics could face liability if a person in its employ qualified as a "temporary worker" under the Policy, as those workers are excluded from the Employer's Liability Exclusion, and are therefore covered.  Evidence received at trial indicates that Grove was JNJ Express's employee, was loaned to JNJ Logistics, was paid by JNJ Express, but was working in a temporary capacity for JNJ Logistics.  The Policy does not indicate that an employee of a third party could not also be the temporary worker of JNJ Logistics.  In short, the Policy grants coverage to those individuals that qualify as "temporary workers" because "temporary workers" are not "employees" as defined in the Policy and excluded from coverage by the Policy's Employer's Liability Exclusion.  (See id. at 412.)

The remaining inquiry is whether Grove satisfies either of the other two criteria present in the "temporary worker" definition:  whether he was "substitute[d] for a permanent 'employee' on leave," or "to meet seasonal or short-term workload conditions."  (See id. at 414.)

Evidence received at trial was uncontroverted that Grove was not substituting for one of JNJ Logistics's permanent employees at the time of his injury.  (See Trial Tr. at 42:7-12; 42:25-43:4, ECF No. 133.)  Ennis testified as follows:

Q:  Was Mr. Grove substituting for an employee of JNJ
Logistics at the time of his accident?

A [ENNIS]:  No, sir, he was down there because of the
seasonal pick up, and I did not have enough part-time
employees to work in Logistics to cover everything
that needed to be covered, so I temporarily assigned
him from JNJ Express to JNJ Logistics.

(Id. at 42:7-12.)  Accordingly, the Court finds Grove does not

meet the first criterion.

Evidence received at trial indicated that Grove was working

for JNJ Logistics "to meet seasonal or short term workload

conditions."  Ennis testified that Grove was being used

"temporar[il]y . . . for the seasonal adjustment of the

lawnmowers and heavy season to get through the three-month

period." (Id. at 42:25-43:4.)  Ennis testified:

Q:  Okay.  Was there any seasonality to the work that
was done?

A [ENNIS]:  Yes, sir.  Like I said earlier, it was
always in the spring at Olive Branch.

(Id. at 24:7-10.)  Ennis continued:

[A]bout April is when the seasonal stuff come in at
JNJ Logistics, Sears required, and in my head, I had
remembered Darius [Grove] asking me four or five
times, because we wasn't as big as we are now, and I
knew every – still know every driver I ever employed,
but knew every employee, and I thought about Darius
[Grove] and I offered it to him, I said this will be
temporary, I can temporary work you over at JNJ
Logistics.  And sometimes when the season is started –
it starts about the end of March and runs sometimes
over into June, no later than July.  I said when that
happens, you will have to go back over the road, and
he agreed to it, but he got hurt.

(Id. at 27:14-25.)

Ennis also described the arrangement between JNJ Express and JNJ Logistics:

> Q:  So did [Grove] always receive while he was working at Olive Branch at Sears Logistics an Express check?
>
> A [ENNIS]:  Yes, sir. . . .  We never changed them for a short time.  If you're just going to help for a short time, we temporary loaned them to the other company, kept the record of hours, turned it into our accountant, and our accountant would work it out where the company got charged rather than bounce them from one payroll to the other.

(Id. at 29:9-18.)  Ennis reiterated this arrangement on cross-examination:

> Q:   . . . And was the arrangement between [JNJ] Express and [JNJ] Logistics, did it change over the years in terms of using long haul drivers to do yard work, or has it always been the same?
>
> A [ENNIS]:  Always been the same.
>
> Q:  Okay.
>
> A [ENNIS]:  On a temporary basis.

(Id. at 37:23-38:3.)  Ennis also testified that he was Grove's superior while Grove was working for JNJ Logistics.  (Id. at 38:11-39:18.)  The Court received no evidence that contradicted Ennis's testimony that Grove was JNJ Express's employee loaned to JNJ Logistics for short-term or seasonal work.  Accordingly, the Court finds that Grove meets the second criterion of the insurance policy's definition of

"temporary worker" – that he was working for JNJ Logistics

"to meet seasonal or short term workload conditions."

For the foregoing reasons, the Court finds 1) that

Scottsdale has not met its burden to show the Policy's

Employer's Liability Exclusion applies; 2) that Grove was a

"temporary worker" as defined in the Policy; 3) that there

is coverage for Grove as a "temporary worker" under the

Policy; and 4) therefore Scottsdale will owe indemnity to

JNJ Logistics if JNJ Logistics is found liable in the

third-party action in Mississippi.

## IV. CONCLUSION

For the foregoing reasons, the Court finds 1) that

Scottsdale owed a duty to defend JNJ Logistics in the third-

party complaint filed in the Grove action; 2) that Scottsdale's

denial of a defense was a breach of the JNJ Logistics-Scottsdale

Policy; 3) that the Policy's Employer's Liability Exclusion does

not apply; 4) that Darius Grove was a "temporary worker" as

defined in the insurance policy contract; and 5) that the Policy

provides coverage for Grove, and therefore Scottsdale must

provide indemnity to JNJ Logistics if JNJ Logistics is found

liable in the Grove action.

As stated supra Part I.B., the parties shall submit

briefing on the damages flowing from Scottsdale's breach of

contract within twenty-eight (28) days of entry of this

Order.  The parties shall submit any response briefs within twenty-one (21) days thereafter.

**IT IS SO ORDERED**, this 31st day of December, 2013.

/s/ Jon P. McCalla

JON P. McCALLA
U.S. DISTRICT COURT JUDGE